UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. BURNS, INMATE #20906010,<br><br>                           Plaintiff,<br><br>vs.<br><br>SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; CONTRACT DOCTORS FOR SAN DIEGO JAILS; ACTING SHERIFF KELLY MARTINEZ; and RETIRED SHERIFF BILL GORE,<br><br>                          Defendants. | Case No.: 22-CV-372 JLS (MDD)<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**<br><br>(ECF Nos. 1, 2) |

Plaintiff John C. Burns, an inmate detained at the Vista Detention Facility in Vista, California, and the George Bailey Detention Facility in San Diego, California, at the time of the events, is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff claims he has been denied adequate medical care and sanitary conditions of confinement in violation of the Eighth and Fourteenth Amendments while in the custody of the San Diego County Sheriff's Department. (*Id.* at 3–7.) Plaintiff has not

///

1

prepaid the civil filing fee required by 28 U.S.C. § 1914(a) and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

I.     **Motion to Proceed IFP**

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to prepay the entire fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) & (4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his San Diego County Sheriff's Department Prison Certificate, which indicates that during the six months prior to filing suit Plaintiff had an average monthly balance of $21.21 and average monthly

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

deposits of $0.71, and an available balance of $4.28 in his account at the time he filed suit. (ECF No. 2 at 6–7.) Plaintiff's Motion to Proceed IFP is **GRANTED**. The Court assesses an initial partial filing fee of $4.24. Plaintiff remains obligated to pay the remaining $345.76 in monthly installments even if this action is ultimately dismissed. *Bruce*, 577 U.S. at 84; 28 U.S.C. § 1915(b)(1)&(2).

## II.     Screening pursuant to §§ 1915(e)(2) & 1915A(b)

### A.     Standard of Review

Because Plaintiff is a prisoner[2] and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual

---

[2] Although it is unclear whether Plaintiff is a pretrial detainee or a convicted prisoner, as defined by the PLRA a "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.    *Plaintiff's Allegations*

In count one of the Complaint, Plaintiff claims violations of his rights to due process and to be free from cruel and unusual punishment. (ECF No. 1 at 3–4.) He alleges he has been in the custody of the San Diego County Sheriff's Department at the Vista and George Bailey detention facilities since January 2020, and during that time has submitted requests for medical treatment "for three separate hernias." (*Id.* at 3.) He states that although he has been seen by medical staff, "other than being approved a 'truss' and 'abdominal wrap' which do nothing to alleviate pain - in fact wearing them causes more pain - I was told that if I can 'lay down and push the hernias back in,' that the county will not move forward." (*Id.*) He states that he has been in constant pain for two years "which is getting worse, especially when I use the restroom. I have been given nothing for the pain." (*Id.*) He states that:

> right before my arrest, I went to Palomar West in Escondido, where I was not only referred to a "specialist," but was placed on

>"Norco" for pain. I was told to "avoid exercise." As a result, I've gained 95-100 lbs., which caused further medical issues which are also not being properly addressed. Surgery has been denied at every step and I continue to live in constant pain and discomfort in violation of 5th and 8th Amendment rights to 'due process," "cruel and unusual punishment" as well as the right to live free from "pain and suffering." The frustration at not being helped or taken seriously concerning my "pain" is also impacting my mental health. The last doctor I spoke to about these 3 hernias spoke to me at my cell door (which is illegal) never even looked at the hernias, yet told me that because there are no "intestines" in the hernias, they "don't hurt." This doctor refused to provide her name to me when I asked and left. (That was on 10/16/21). [¶] As a direct result of sudden weight gain, I now have "localized edema" in both legs and feet and continue to be told to "lay down and elevate my feet," which is not helping my weight or hernia issues, or the constant pain I'm in as a refusal from medical to treat me for my continuous issues.

(*Id*. at 3–4.)

Plaintiff had an ultrasound on January 5, 2022, in response to a lump in his right breast, and 65 days later Dr. Raffi came to his cell door to discuss the results. (*Id*. at 10–11.) He contends Dr. Raffi, who is not named as a Defendant, "refused me treatment for my 3 hernias, but also for 'hepatitis c.' She refused me any type of treatment for the extremely painful lump in my chest because she 'thinks' the lump is not 'cancerous' or 'malignant.' When I asked her, she said 'there's no way to tell for certain,'" and told Plaintiff "yes you can order further tests or remove the lump altogether, which she said the county will not allow her to do." (*Id*. at 11.) Plaintiff states he has a long history of mental illness, and that physicians and mental health professionals are brought to his cell door where they discuss his "medical and psychiatric issues where anyone can hear," which, although convenient, violates state law and detention facility policies. (*Id*.)

In counts two and three of the Complaint, Plaintiff claims violations of his right to safe and healthy conditions of confinement. (*Id*. at 5–7.) He alleges he has been housed in a cell with black mold on the ceiling since December 28, 2021, states that detention

facility personnel told him they have nowhere to house inmates "while the mold is removed," and claims that "those inmates who do speak up are retaliated against by facility staff." (*Id*. at 5.) Although an inmate who filed a grievance about mold in his cell was moved, a new inmate was housed in that same cell several hours later without it being cleaned. (*Id*. at 5–6.) He alleges inmates "with severe mental issues are often 'skipped' for dayroom, which only makes matters worse, as well as more unsanitary as trash stacks up in those inmates' cells." (*Id*.) Plaintiff alleges multiple inmate requests and grievances, lawsuits, investigations, and news coverage show that detention facility staff are aware of the "deadly and dangerous conditions" affecting the physical and mental health of inmates. (*Id*. at 6.) He claims Defendant Acting San Diego County Sheriff Kelly Martinez is responsible for the care of inmates in the detention facilities and retired San Diego County Sheriff Bill Gore has neglected Plaintiff's pain and suffering and failed to train his deputies on how not to blatantly disregard inmate safety and health. (*Id*. at 7, 10.)

In addition to Martinez and Gore, the Defendants named in the Complaint are the San Diego County Sheriff's Department and Contract Doctors for San Diego Jails. (*Id*. at 1–2.) Plaintiff states that he has received no response to his requests for the names of his examining doctors, and therefore he is unable to name them as Defendants. (*Id*. at 4.) He seeks monetary damages and an injunction providing him with surgery, proper pain relief, and a detention facility policy change regarding pain management for all inmates. (*Id*. at 9.)

The Complaint was filed on March 18, 2022. On April 18, 2022, Plaintiff filed a Notice of Change of Address and an Update and Information in Support of Complaint. (ECF Nos. 3–4.) He indicates he was notified on April 1, 2022, that the prescriptions for his medications Haldol and Artane had expired, was transferred on April 7, 2022, from the Vista Detention Facility back to the George Bailey Detention Facility, and was informed on April 14, 2022, that his medications were mistakenly discontinued and would be renewed on April 18 or 19, 2022. (ECF No. 3 at 1–2.)

///

### C.     Analysis

The Eighth Amendment's prohibition on the infliction of cruel and unusual punishment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101–03 (1976). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03).

Plaintiff's allegations of a serious medical need are sufficient to survive the screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.").

The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To plausibly allege deliberate indifference, "the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

If Plaintiff was a pre-trial detainee at the time of the events alleged in the Complaint, then an objective test for deliberate indifference under the Due Process Clause of the Fourteenth Amendment applies rather than the subjective test under the Cruel and Unusual

///

Punishments Clause of the Eighth Amendment.[3]  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that the Due Process Clause of the Fourteenth Amendment is applicable to claims of pre-trial detainees rather than the Eighth Amendment because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions").  Under the objective reasonableness standard, Plaintiff must "prove more than negligence but less than subjective intent - something akin to reckless disregard."  *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).  To state a 42 U.S.C. § 1983 claim for inadequate medical care, a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries."  *Id*.

Allegations of differences of opinion over proper medical care, inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth or Fourteenth Amendment violation.  *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference) (quoting *Estelle*, 429 U.S. at 105–06); *Toguchi*, 391 F.3d at 1058 (a disagreement over the necessity or extent of medical treatment does not show deliberate indifference); *Gordon*, 888 F.3d at 1124–25 (a pre-trial detainee must show more than lack of due care or negligence); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A

---

[3] Plaintiff's reference to a Fifth Amendment violation fails to state a claim because the allegations in the Complaint involve state actors only.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government - not to those of state or local governments.").

difference of opinion does not amount to a deliberate indifference to [plaintiff]'s serious medical needs."); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under [§ 1983]."); *Estelle*, 429 U.S. at 105–06 (holding that "an inadvertent failure to provide medical care," allegations that "a physician has been negligent in diagnosing or treating a medical condition," or "medical malpractice" do not state an Eighth Amendment claim, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

> 1. *San Diego County Sheriff's Department/San Diego County*

The Complaint names as a defendant the San Diego County Sheriff's Department. (ECF No. 1 at 2.) Plaintiff cannot state a 42 U.S.C. § 1983 claim against the San Diego County Sheriff's Department because that entity is not a "person" within the meaning of § 1983. *See Tsao*, 698 F.3d at 1138 ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a *person* acting under color of state law." (emphasis added)); *Johnson v. County of San Diego*, 18cv1846-LAB (RBB), 2020 WL 5630503, at *3 (S.D. Cal. 2018) ("Local law enforcement departments, like the San Diego Sheriff's Department, municipal agencies, or subdivisions of that department or agency, are not proper defendants under § 1983.").

The Court will liberally construe the Complaint as attempting to state a claim against the County of San Diego rather than the San Diego County Sheriff's Office. In order to state a claim against the County of San Diego, Plaintiff must allege that: (1) he was deprived of a constitutional right, (2) the County has a policy, custom or practice which amounted to deliberate indifference to that constitutional right; and (3) the policy, custom, or practice was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)); *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead,

it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Municipal liability may be shown when an employee who committed the constitutional violation was "acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (citing *Monell*, 436 U.S. at 694). To hold San Diego County liable for Defendant Gore's alleged failure to train his deputies, Plaintiff must set forth non-conclusory allegations "that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriquez v. City of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Plaintiff has not identified in the body of the Complaint a custom, policy, or practice allegedly adhered to with deliberate indifference to his constitutional rights. His allegation that Dr. Raffi told him the County would not allow her to remove the lump in his chest or order further tests because Dr. Raffi "'thinks' the lump is not 'cancerous' or 'malignant,'" does not plausibly allege that a custom, policy, or practice caused a constitution violation. Plaintiff merely alleges a disagreement with Dr. Raffi over a medical diagnosis or the proper course of treatment, not constitutionally inadequate medical care. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Gordon*, 888 F.3d at 1124–25 (holding a pre-trial detainee must show more than lack of due care or negligence to allege a constitutional violation). The policy, custom, or practice of examining inmates at their cell door without adequate privacy in violation of detention facility policies and medical norms, without allegations of harm arising therefrom, does not plausibly allege deliberate indifference to a constitutional right to adequate medical care. *Id.*; *Dougherty*, 654 F.3d at 900–01.
///

The allegations that Defendant Martinez is responsible for the medical care of County inmates, that Defendant Gore failed to train his deputies not to ignore inmate health, and that detention facility staff were or should have been on notice that inmates have not received adequate medical care through multiple inmate requests and grievances, lawsuits, investigations, and news coverage, are too vague to plausibly allege that a custom, policy, or practice caused his injuries. "[P]roof of a single incident of unconstitutional activity," or even a series of "isolated or sporadic incidents" will not give rise to § 1983 municipal liability. *Grant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 1996); *Monell*, 436 U.S. at 691 (holding that for an unwritten policy or custom to form the basis of a claim, it must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice). Liability based on custom, practice, or policy "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Facts regarding the specific nature of the policy, custom, or practice are required to state a claim, as merely stating the subject to which the policy relates, such as medical care, is insufficient. *Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding a complaint with conclusory allegations of a municipal policy failed to state a claim because it did not "put forth additional facts regarding the specific nature of this alleged policy, custom or practice"); *Iqbal*, 556 U.S. at 678 (stating the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555); *Hernandez*, 666 F.3d at 637 (applying the pleading standards of *Iqbal* and *Twombly* to *Monell* claims).

If Plaintiff wishes to proceed with a claim against the County of San Diego, he must set forth factual allegations that identify a San Diego County custom, policy, or practice and plausibly allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Collins v. County of Harker Heights*, 503 U.S. 115, 123 (1992); *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (providing that in order to impose liability on a local government under § 1983, a plaintiff must plead and prove that

an "action pursuant to official municipal policy" caused the plaintiff's injury). Alternatively, Plaintiff must allege that "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Rodriquez*, 891 F.3d at 802–03. To the extent Plaintiff seeks to hold the San Diego County liable for Defendant Gore's failure to train his deputies, he must set forth non-conclusory allegations "that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [County] can reasonably be said to have been deliberately indifferent to the need.'" *Id*. at 802 (quoting *Harris*, 489 U.S. at 390).

### 2. *Acting Sheriff Martinez and Retired Sheriff Gore*

Plaintiff claims that Defendant acting Sheriff Martinez is responsible for the care of inmates in the San Diego County jail facilities. (ECF No. 1 at 6.) He claims Defendant retired Sheriff Gore neglected Plaintiff's pain and suffering and failed to train his deputies on how not to blatantly disregard inmate safety and health. (*Id*. at 10.) He alleges that multiple inmate requests and grievances, lawsuits, investigations, and news coverage all indicate that detention facility staff are aware of the "deadly and dangerous conditions" affecting the physical and mental health of inmates. (*Id*. at 7.)

Plaintiff seeks to hold these Defendants liable in their official capacities only. (*Id*. at 2.) The Complaint fails to state a claim against these Defendants in their official capacities for the same reason it fails to state a claim against the County of San Diego. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official capacity suits [under § 1983] . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690, n.55)).

The Complaint does not state a claim against Defendants Martinez and Gore in their individual capacities based on their responsibility for medical care of inmates in their custody. Supervisory liability is not an independent cause of action under § 1983, and to state a claim against supervisory personnel, Plaintiff must allege both an underlying

constitutional violation and a connection between the supervisor's actions and the violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's conclusory allegations in the Complaint do not plausibly allege that Defendants Martinez or Gore had knowledge that Plaintiff was not receiving adequate medical care or that their action or inactions caused Plaintiff's injuries. Plaintiff alleges he submitted requests for medical treatment while in Defendants' custody and was seen by doctors, but Plaintiff disagrees with the doctors' diagnoses and treatment plans, including a failure to provide adequate pain medication. (ECF No. 1 at 3–7.) There are no allegations that Defendants Martinez or Gore were aware of or involved in those requests, merely the conclusory allegations that Martinez is responsible for medical care at San Diego County detention facilities, that Gore failed to train his deputies on how not to blatantly disregard inmate safety and health, and that facility staff were or should have been on notice that inmates have not received adequate medical care in the past through otherwise unidentified multiple inmate requests and grievances, lawsuits, investigations, and news coverage showing the "deadly and dangerous conditions" affecting the physical and mental health of inmates. The Complaint fails to contain factual allegations describing individual acts or omissions by Martinez or Gore related to Plaintiff's medical treatment that resulted in a constitutional violation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a

constitutional deprivation."). The allegation that these Defendants were or should have been aware that inmates were not receiving adequate medical care through unidentified inmate grievances, investigations, or news coverage are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (stating the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (quoting *Twombly*, 550 U.S. at 555)).

If Plaintiff wishes to proceed with a claim against Defendants Martinez and Gore in their individual capacities, he must set forth factual allegations which plausibly allege what acts or omissions they took or failed to take that caused him to receive constitutionally inadequate medical care. *Leer*, 844 F.2d at 633.

### 3. Contract Doctors for San Diego Jails

The only remaining Defendants named in the Complaint are: "Contract Doctors for San Diego Jails." (ECF No. 1 at 2.) Plaintiff states that: "I submitted a request for the names of specific doctors that I have been seen by but received no response at all, which is why I can't provide specific names." (*Id.* at 4.)

A plaintiff may sue unnamed defendants when the identity of a defendant is not known prior to the filing of the complaint. *Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980). However, Plaintiff must still allege that each individual unknown defendant was personally involved in the alleged constitutional violation. *See Starr*, 652 F.3d at 1207; *Leer*, 844 F.2d at 633.

Plaintiff fails to provide identifying information regarding any individual doctor he seeks to name as a defendant, such as the time, place, and nature of the treatment received, or facts sufficient to describe with particularity the doctors' participation in any alleged constitutionally inadequate medical care. *See Gordon*, 888 F.3d at 1125 (stating in order to state a § 1983 claim for inadequate medical care, a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would

have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries"). Although Plaintiff alleges several doctors violated prison policy and state law by conducting examinations at his cell door where there was a lack of privacy, and disagrees with their diagnosis and treatment, including on October 16, 2021, those allegations are insufficient to plausibly allege a constitutional violation because they rely on a disagreement between Plaintiff and the medical provider regarding the proper diagnosis or treatment. *Id.*; *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

### 4.  *Conditions of Confinement/Retaliation*

Finally, Plaintiff alleges he has been housed in a cell with black mold on the ceiling since December 28, 2021, that detention facility personnel told him they have nowhere to house inmates "while the mold is removed," and "those inmates who do speak up are retaliated against by facility staff." (ECF No. 1 at 5.)  He alleges that although an inmate who filed a grievance about mold in his cell was moved, a new inmate was housed in the same cell several hours later without it being cleaned, and there are instances of unsanitary conditions when "trash stacks up" in the cells of inmates with mental illness when they are skipped for time in the dayroom. (*Id*. at 5–7.)  He claims Defendant Martinez is responsible for the care of inmates, that Defendant Gore neglected Plaintiff's pain and suffering and failed to train his deputies on how not to blatantly disregard inmate safety and health, and that facility staff are aware of the "deadly and dangerous conditions" affecting the physical and mental health of inmates in the San Diego County jail facilities through inmate requests and grievances, lawsuits, investigations, and news coverage. (*Id*. at 6–7, 10.)

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  With respect to the allegation that trash piles up in cells creating unsanitary conditions, Plaintiff does not allege how long the conditions lasted or how they affected him.  Although "subjection of a prisoner to lack of sanitation that is severe or

prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," the temporary imposition of such conditions does not state a claim absent allegations of a risk of harm. *Anderson v. County of Kern*, 45 F.3d 1310, 1314–15 (9th Cir. 1995); *Johnson*, 217 F.3d at 731 ("The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred.").

With respect to Plaintiff's allegation that he has been housed in a cell with black mold on the ceiling since December 28, 2021, as noted, in order to state a claim for unconstitutional conditions of confinement, a pre-trial detainee must plausibly allege that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused plaintiff's injuries." *Gordon*, 888 F.3d at 1125. As currently drafted, the Complaint does not plausibly allege any Defendant named in the Complaint was responsible for, or aware of, black mold in Plaintiff's cell, and there are no facts alleging Plaintiff suffered symptoms from exposure to the mold. His allegations that Defendants Martinez and Gore are responsible for general inmate welfare and facility staff were placed on notice of "deadly and dangerous conditions" affecting the physical and mental health of inmates in the San Diego County jail facilities through grievances, lawsuits, investigations, and news coverage, lack specific factual allegations that any named Defendant was aware of mold in the cells and are too conclusory to state a claim for unsanitary conditions of confinement. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").

///

16

22-CV-372 JLS (MDD)

The allegation that "those inmates who do speak up are retaliated against by facility staff," fails to state a claim because it is conclusory and fails to allege Plaintiff was retaliated against. *See Iqbal,* 556 U.S. at 678 (holding that the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting the plausibility standard for pleading a § 1983 claim); *Hentz v. Ceniga*, 402 Fed. Appx. 214, 215 (9th Cir. 2010) (holding conclusory allegations of retaliation are insufficient to state a claim); *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

Accordingly, the Court *sua sponte* dismisses the Complaint based on a failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### D. *Leave to Amend*

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

## III. Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Watch Commander of the Vista Detention Facility or any subsequent "agency having custody" of Plaintiff to collect from Plaintiff's trust account

the initial filing fee of $4.24 and thereafter collect the remaining $345.76 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Watch Commander, Vista Detention Facility, 325 S. Melrose Drive, Vista, California 92081.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) and **GRANTS** Plaintiff <u>forty-five (45) days</u> leave from the date of this Order in which to file an Amended Complaint that cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file an Amended Complaint, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: May 18, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge